UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

SALLY BEAUTY HOLDINGS, INC. and §
SALLY BEAUTY SUPPLY LLC, §
§
    Plaintiffs, §
§
§
v. §     Civil Action No. 4:25-cv-00950
§
§
THE CINCINNATI INSURANCE §
COMPANY, THE CINCINNATI §
CASUALTY COMPANY, and LM §
INSURANCE CORPORATION, §
§
    Defendants. §

---

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO
THE CINCINNATI INSURANCE COMPANY AND THE CINCINNATI CASUALTY
COMPANY'S MOTION TO DISMISS CAUSES OF ACTION B, C, E, F, AND H OF
PLAINTIFFS' SECOND AMENDED COMPLAINT**

---

    Plaintiffs Sally Beauty Holdings, Inc. and Sally Beauty Supply LLC (collectively, "Sally Beauty") file this Sur-Reply in Opposition to The Cincinnati Insurance Company and The Cincinnati Casualty Company's (collectively, "Cincinnati") Motion to Dismiss Causes of Action B, C, E, F, and H of Plaintiffs' Second Amended Complaint (Dkt. #41) (the "Motion") and would respectfully show the Court as follows:

**I.  SUMMARY**

    Sally Beauty's Second Amended Complaint (the "Complaint") (Dkt. #31) contains allegations spanning more than 25 pages that describe Cincinnati's long pattern of (a) failing to comply with its admitted contractual duty to defend the underlying "Hair Relaxer Ligation," (b) randomly paying a fraction of defense costs at its own whim, and (c) engaging in other unfair, unreasonable, and vexatious conduct that violates Texas and, in the alternative, Illinois law.  These

---

allegations go beyond stating plausible claims for violations of the Texas Prompt Payment Act and Texas Unfair Claims Settlement Practices Act, and, alternatively, Section 155 of the Illinois Insurance Code and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

Like its Motion, the arguments in Cincinnati's reply (the "Reply") (Dkt. #51) conflict with the Rule 12(b)(6) standard and are based on irrelevant suppositions and gross mischaracterizations of the Complaint's allegations. First, Cincinnati incorrectly applies Rule 9(b)'s heightened pleading standard to Sally Beauty's Texas Prompt Payment Act claim (and its other extracontractual claims that do not sound in fraud). Second, Cincinnati doubles down on its assertion that, despite requiring a merits-based determination and the Complaint alleging the opposite, the Court should assume a "bona fide" dispute exists that would preclude extracontractual liability. Finally, Cincinnati requests dismissal of the ICFA claim based on the same flawed arguments made in its Motion, which Sally Beauty already addressed in its Response and Brief in Opposition to the Motion (the "Response") (Dkt. #46).

In sum, Cincinnati's core dismissal argument is that, because the Complaint states that Cincinnati reviewed a few of the 225+ defense cost invoices it received and arbitrarily paid a fraction of those costs without explanation, Sally Beauty cannot state a claim for any extracontractual relief. Cincinnati's view is that any insurer that agrees to defend its insured but then fails to actually fulfill that duty is absolved from any extracontractual liability as long as it pays a nominal, even random, portion of defense costs whenever the insurer feels like it. This position defies well-established law and common sense and does not support dismissal of Sally Beauty's well-pled extracontractual claims.

## II.  ARGUMENTS AND AUTHORITIES

**A.    The Complaint Plainly States a Texas Prompt Payment Act Claim.**

In its Reply, Cincinnati reasserts its argument that the Complaint does not state a plausible

---

Texas Prompt Payment Act claim because (a) Rule 9(b)'s heightened pleading standard applies to this claim and (b) the Complaint does not allege that Cincinnati failed to pay covered amounts by the statutory deadline.  Rule 9(b) does not apply to this strict liability statute, and the Complaint states a claim for Cincinnati's Texas Prompt Payment Act violations.

None of the cases in Cincinnati's Reply support its argument that the Court should expand the application of Rule 9(b)'s stringent pleading requirements beyond its plain language to an insured's Texas Prompt Payment Act claim.[1]  Courts that have actually analyzed Texas Prompt Payment Act claims in the context of a Rule 12(b)(6) motion have rejected Cincinnati's argument and applied the traditional liberal pleading standard.  *See, e.g.*, *Phenix De Tejas, Inc. v. Sentinel Ins. Co.*, No. 5:24-CV-1112-JKP-HJB, 2025 WL 1243912, at *4 (W.D. Tex. Apr. 29, 2025); *Alvarado Architects & Assocs., Inc. v. Underwriters at Lloyd's London*, No. 7:21-CV-00465, 2022 WL 22899796, at *5, 7 (S.D. Tex. Mar. 8, 2022); *Chamberlin v. GEICO Indem. Co.*, No. 3:19-CV-02036-L-BT, 2020 WL 5922081, at *3 n.3 (N.D. Tex. May 27, 2020), *dismissed as moot*, 2020 WL 3887845 (N.D. Tex. July 10, 2020); *see also Agredano v. State Farm Lloyds*, 975 F.3d 504, 507 (5th Cir. 2020) (finding that traditional pleading standard applied to Texas Prompt Payment Act claim and denying insurer's motion to dismiss where complaint alleged insured submitted a claim, insurer denied it, and insured was entitled to 18% interest).[2]

---

[1] For example, Cincinnati partially quotes a "soundbite" from *Williams v. Steward Health Care Systems, LLC*, No. 5:20CV123-RWS-CMC, 2021 WL 7629734, at *9 (E.D. Tex. Dec. 16, 2021) to support its argument that Rule 9(b) applies to all Texas Insurance Codes across the board.  Reply at 2-3.  However, *Williams* is not an insurance case and does not involve any Texas Insurance Code claims (much less a Texas Prompt Payment Act claim).

[2] This Court has also recognized the Fifth Circuit's admonishment against extending Rule 9(b) beyond the claims explicitly enumerated therein.  *RooR Int'l BV v. Smoke & Vapor*, No. 4:18-CV-711-ALM-KPJ, 2019 WL 4267594, at *2 (E.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 4257014 (E.D. Tex. Sept. 8, 2019) (Mazzant, J.) (noting that "The Fifth Circuit has explained that 'Rule 9(b)'s stringent pleading requirements should not be extended to causes of action not enumerated therein'" in denying motion to dismiss Deceptive Trade Practice Act claim not based on fraud (quoting *Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 668 (5th Cir. 2004)).  And even Cincinnati's co-defendant Liberty Mutual disagrees with Cincinnati and acknowledges that Rule 9's heightened pleading standard does not apply to Texas Prompt Payment Act claims.  *See* Liberty Mutual's

---

This conclusion is also consistent with the Texas Prompt Payment Act's strict liability application, which mandates statutory penalties for <u>any</u> delayed payment without requiring proof of fraud or intent.  Even an insurer that has a good faith basis for denying or only partially paying a covered claim remains liable for the act's statutory penalties.  *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 658 (Tex. 2021) (holding that "partial payment of a valid claim" does not "discharge liability for statutory interest" under the Texas Prompt Payment Act on other amounts ultimately "owned but unpaid when the statutory deadline expires"); *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 832 n.8 (Tex. 2019) ("An insurer's obligation to pay interest and fees depends solely on whether the insurer 'delays payment on a claim'" and "does not depend on the insurer's unreasonableness, negligence, intentional noncompliance, bad faith, or breach of some other standard." (Boyd, J., concurring) (citations omitted)).[3]

Here, the Complaint alleges a plausible claim under Sections 542.058 and .060 of the Texas Prompt Payment Act (which impose mandatory penalties of 18% and attorneys' fees on insurers that delay paying a covered claim by more than 60 days).  The Complaint explicitly alleges that Cincinnati's policies cover the defense of the Hair Relaxer Litigation, Cincinnati agreed to defend Sally Beauty, and Cincinnati is liable to Sally Beauty for its failure to cover such costs. Complaint ¶¶ 1, 14-15, 20-22, 30-40.  The Complaint also describes a clear timeline of Sally Beauty notifying Cincinnati of its claim in 2023 and Cincinnati (a) acknowledging receipt of such claim and agreeing to defend Sally Beauty in June 2023, (b) receiving 225+ defense cost invoices to since this time, (c) delaying its first payment by more than six months, (d) delaying another

---

Motion to Dismiss (Dkt. #40) at 8 (arguing that the Texas Prompt Payment Act claims "fail to satisfy <u>Rule 8's requirement of a 'short and plain statement</u>.'" (emphasis added)).

[3] This Texas Supreme Court authority belies Cincinnati's argument that an insured can only state a Texas Prompt Payment Act for amounts that are "undisputed" at the time of non-payment.  Reply at 4.

eight months before making an additional, partial payment, (e) completely failing to pay a vast majority of invoices it has received, and (f) paying no attorneys' fee invoices since July 2025. Response at 4-5, 10.  Finally, the Complaint explicitly alleges that Cincinnati failed to pay Sally Beauty's claim pursuant to the Texas Prompt Payment Act and that Cincinnati is liable to Sally Beauty for statutory 18% interest and attorneys' fees under the act. *Id.* ¶¶ 42-44.  These allegations state a plausible Texas Prompt Payment Act claim, especially when viewed in the light most favorable to Sally Beauty.  Cincinnati, as the party that admittedly received all 225+ defense invoices and the only party that knows why it paid some defense amounts for some invoices, paid those amounts many months late, and refused to pay anything towards certain invoices (all as alleged in Sally Beauty's Complaint), can hardly claim surprise or lack of information relevant to the Texas Prompt Payment Act claim. As such, Cincinnati cannot meet its burden under Rule 12(b)(6), and the Court must deny the Motion as it relates to Sally Beauty's Texas Prompt Payment Act claim.[4]

**B.      The Complaint Alleges the Opposite of Any "Bona Fide" Dispute.**

In its Reply, Cincinnati focuses almost entirely on the argument that the Complaint demonstrates Cincinnati has a legitimate basis for delaying and failing to pay Sally Beauty's defense costs as an overarching basis for dismissing all of Sally Beauty's extracontractual claims. As detailed in Sally Beauty's Response, Cincinnati bases this bona fide dispute argument on gross mischaracterizations of the Complaint's allegations that conflict with the Rule 12(b)(6) standard.

First, throughout its Reply, Cincinnati asks the Court to assume that, because the Complaint alleges Cincinnati agreed to defend Sally Beauty, reviewed a few invoices, and arbitrarily paid a

---

[4] If the Court were to conclude that more detail is required to provide fair notice of this claim, Sally Beauty seeks leave to amend and include such detail in an amended complaint. *See* Fed. R. Civ. P. 15(a).

few invoices long after receiving them, Cincinnati is absolving of extracontractual liability.  The Complaint alleges the opposite. It alleges that despite Cincinnati's admitted obligation to defend, it failed to review and pay a vast majority of defense cost invoices without explanation (even undisputed amounts) and significantly delayed the minimal payments it made.  Response at 4-6. These allegations, which the Court must take as true, state in no uncertain terms that Cincinnati has breached (and continues to breach) its duty to defend Sally Beauty and has engaged (and continues to engage) in other statutorily prohibited conduct.  Therefore, Cincinnati's bona fide dispute argument defies the allegations and does not support dismissal.

The practical implications of Cincinnati's position are even more troubling.  Allowing an insurer like Cincinnati – which agreed to defend its insured in large, multi-district litigation only to immediately abandon it – to avoid extracontractual liability by belatedly paying a nominal amount would encourage payment delays and other unfair insurance practices the Texas (and Illinois) legislatures have sought to curtail.  *See* Tex. Ins. Code Ann. §§ 541.001-.003, .008, .051-.087, .151-.152 (broadly defining prohibited unfair and deceptive acts or practices in the business of insurance, requiring liberal application to promote such purpose, and allowing recovery of punitive damage and other penalties against violating insurers); *id.* §§ 542.051-.061 (enacting strict deadlines for processing and paying insurance claims, requiring liberal construction "to promote the prompt payment of insurance claims," and imposing mandatory 18% interest and attorneys' fees penalties on violating insurers); *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 656-57 (Tex. 2021) (rejecting argument that insurer's partial payment discharges extracontractual liability and noting, "Otherwise, an insurer could pay a nominal amount toward a valid claim to avoid the prompt payment deadline that the Legislature has imposed"); *see also Burress-Taylor v. Am. Sec. Ins. Co.*, 980 N.E.2d 679, 687 (Ill. App. Ct. 2012) (noting that the Illinois legislature enacted

Section 155 "to make suits by policyholders more economically feasible and to punish insurers for vexatious and unreasonable conduct").

Second, Cincinnati's Reply does not address the Complaint's allegations supporting Sally Beauty's individual Texas Unfair Claims Settlement Practices Act claims. Instead, Cincinnati again argues that a bona fide dispute exists, absolving it of liability at this early stage for any alleged Texas Unfair Claims Settlement Practices Act violations as long as it pays whatever minimal amounts it wants, when it is convenient for Cincinnati, without explanation or investigation. *See* Reply at 5-6.[5] In contrast, the Complaint alleges that Cincinnati engaged in actionable conduct that is entirely antithetical to any good-faith attempt to resolve a legitimately disputed claim, including that Cincinnati:

- attempted to avoid its admitted duty to defend, delay its payment obligations, and induce Sally Beauty to refrain from suing Cincinnati by misrepresenting that it was negotiating and imminently closing a cost-sharing agreement with other insurers in violation of Section 541.060(a)(1);

- made no good faith attempts to promptly settle and pay covered defense costs pursuant to its admitted duty to defend (which costs the Complaint alleges are reasonable and necessary) in violation of Section 541.060(a)(2);

- has "not even attempted to promptly provide . . . a reasonable explanation based on the" policies' terms and applicable laws and facts "for its significant delay" "and failure to pay" covered defense cost invoices, and provided only facially baseless comments

---

[5] After abandoning its flawed "independent injury" argument, Cincinnati's Reply now argues for the first time that the Complaint fails to allege Cincinnati's violations caused a loss of policy benefits under *Menchaca* because it "paid some invoices." Reply at 5. The Court should reject this argument outright because Cincinnati raised it for the first time in its Reply. *See, e.g.*, *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, 697 F. Supp. 3d 635, 650 n.4 (E.D. Tex. 2023). Regardless, the Complaint alleges that Sally Beauty incurred actual damages, and unpaid defense costs are a lost "policy benefit" recoverable under the Texas Unfair Claims Settlement Practices Act. Complaint ¶ 55; *see Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 453 (5th Cir. 2018).

---

to the few invoices it has audited, in violation of Section 541.060(a)(3);

- failed to pay, and unreasonably delayed payment of, defense cost invoices from 2024 onward based on the potential availability of other insurance, despite its undisputed obligation to provide a complete defense in violation of Section 541.060(a)(5); and

- refused to pay covered amounts without conducting "any investigation (much less a reasonable investigation)" with respect to Sally Beauty's claim and only reviewed a "small subset" of the 225+ it had received in violation of Section 541.060(a)(7).

Complaint at 10-14; Response at 12-19.[6]

In sum, the Complaint alleges the absence of any bona fide dispute and contains specific allegations describing Cincinnati's numerous Texas Unfair Claims Settlement Practices Act violations.  Any doubts concerning Sally Beauty's claim should be resolved based on the Complaint's allegations read as a whole and in the light most favorable to Sally Beauty.  Such a reading compels denial of Cincinnati's Motion.

**C.    Sally Beauty Alleges ICFA Violations Well Beyond Cincinnati's Contract Breaches.**

In its Reply, Cincinnati argues for dismissal of Sally Beauty's alternative claim that Cincinnati violated the ICFA by engaging in prohibited unfair and deceptive conduct because (a) the Complaint only alleges breaches of contract and (b) Sally Beauty fails to allege reliance and damages. These arguments again mischaracterize the Complaint's allegations and Illinois law.

Sally Beauty's Response details the Complaint's allegations that Cincinnati engaged in a long pattern of unlawful conduct extending well beyond breaching its contractual obligations.

---

[6] In its Reply, Cincinnati also incorrectly argues that Sally Beauty cannot state a claim under Section 541.052 based on the numerous untrue, deceptive, and misleading statements on its public website because Sally Beauty did not rely on these statements in purchasing an insurance policy from Cincinnati.  Reply at 9.  As discussed in Sally Beauty's Response, though Section 541.052 does not contain a reliance requirement, the Complaint alleges reliance.  Response at 16.  And Cincinnati cites no authority that an insured must purchase an insurance policy as a prerequisite to recovering under Section 541.052.

Response at 22-23.  The Response also outlines several illustrative cases where Illinois courts have denied motions to dismiss insureds' ICFA claims alleging that insurers agreed to pay a claim but then strung their insureds along for months, failed to actively pursue the claim, and ricocheted insureds back and forth between multiple insurers – the very unlawful conduct the Complaint alleges against Cincinnati.  Response at 22-23.  Cincinnati's Reply does not address any of these allegations or cases to support its argument that Sally Beauty's ICFA claim only restates the breach claim.[7]

Regarding reliance and damages, as explained in Sally Beauty's Response, Illinois law does not require Sally Beauty to plead reliance to prove its ICFA claim, and the Complaint alleges that Cincinnati's prohibited unfair and deceptive conduct proximately caused it to incur damages beyond contractual benefit of the bargain damages.  Response at 23-24.  Cincinnati's Reply does not address the case law or allegations detailed in Sally Beauty's Response related to reliance and damages.  It simply parrots the same flawed arguments originally made in its Motion.[8]

Accordingly, Cincinnati failed to meet its heavy burden of showing that Sally Beauty has failed to state a plausible ICFA claim.

**D.     The Court Should Grant Sally Beauty Leave to Amend Any Dismissed Claim.**

For the reasons discussed above and in Sally Beauty's Response, Cincinnati has failed to meet its burden of establishing that Sally Beauty failed to state the extracontractual claims included in its Complaint.  However, if the Court concludes that the Complaint does not sufficiently state any such claim, the Court should grant Sally Beauty leave to amend.  *See* Fed. R. Civ. P. 15(a).

---

[7] Cincinnati's sole support, *Greenberger v. GEICO General Insurance Co.*, 631 F.3d 392 (7th Cir. 2011), is inapposite. In *Greenberger*, the insured based its ICFA claim exclusively on the insurer's false promise that it would pay a claim in full and failing to disclose that it would not keep that promise.  *Id.* at 399.

[8] Cincinnati again misstates the Complaint's allegations in arguing that the Complaint "fail[s] to plead proximate causation," which the Complaint pleads explicitly.  Reply at 10; Complaint ¶ 66. ("Sally Beauty has incurred damages <u>proximately caused</u> by [Cincinnati's] unfair and deceptive conduct . . . ." (emphasis added).

---

Denying leave to amend is only "warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment," none of which are present here. *See U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010); *see also Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (even a party's failure to meet Rule 9(b)'s heightened pleading standard "should not automatically or inflexibility result in dismissal of the complaint with prejudice" and a court "should not [dismiss the claim] without granting leave to amend").

### III.  CONCLUSION

For the reasons set forth above and its Response, Sally Beauty has plainly stated extracontractual claims against Cincinnati, and the Court should deny Cincinnati's Motion in its entirety.

Dated: April 10, 2026

Respectfully submitted,

*/s/ Erika Bright*
Erika Bright
Texas Bar No. 24001752
erika.bright@wickphillips.com
Britton D. Douglas
Texas Bar No. 24056731
britton.douglas@wickphillips.com
Charles C. Keeble, Jr.
Texas Bar No. 1115010
charles.keeble@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

**ATTORNEYS FOR PLAINTIFFS**
**SALLY BEAUTY HOLDINGS, INC. AND**
**SALLY BEAUTY SUPPLY LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this pleading has been electronically filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel who are CM/ECF participants on April 10, 2026.

*/s/ Erika Bright*
Erika Bright